# UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| In Re: <br><br> Sandra Freeman, <br><br>                    Debtor | NO. 06-08030 <br><br> Chapter 7 <br><br> Honorable Bruce W. Black |

## NOTICE OF MOTION

TO:  Ocwen Loan Servicing, LLC, ATTN: Ronald M. Faris, President and Chief Executive Officer, 1661 Worthington Road, Suite 100, West Palm Beach, FL 33409 (via U.S. Certified Mail)
Patrick S. Layng, Office of the United States Trustee (via ECF)
Bradley Waller, Chapter 7 Trustee (via ECF)

PLEASE TAKE NOTICE that on January 15, 2016, at 9:00 AM, the undersigned will appear before the Honorable Bruce W. Black at the Joliet City Hall, located at 150 W. Jefferson Street, 2nd Floor, Joliet, Illinois 60432, and will then and there present the attached **Debtor's Motion Pursuant to 11 U.S.C. §§524, 105 for Violations of the Discharge Injunction and Fed. R. Bankr. P. 9020 Seeking Sanctions for Civil Contempt Against Ocwen Loan Servicing, LLC**, at which time you may appear if you so choose.

## Certificate of Service

I, Mohammed O. Badwan, hereby certify that I caused a copy of this notice and attached Motion to be served, via ECF to Patrick S. Layng (United States Trustee) and Bradley Waller (Chapter 7 Trustee), and via U.S. Certified Mail to Ocwen Loan Servicing, LLC, ATTN: Ronald M. Faris, President and Chief Executive Officer, on December 28, 2015, before the hour of 5:00 p.m. from the office located at 900 Jorie Blvd., Ste 150, Oak Brook, IL 60523.

BY: /S/ MOHAMMED O. BADWAN
SULAIMAN LAW GROUP, LTD.
*COUNSEL FOR DEBTOR*
900 JORIE BOULEVARD, SUITE 150
OAK BROOK, IL 60523
PHONE: (630) 575-8181
ATTORNEY NO: 6299011

**UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| In Re: | |
| Sandra Freeman, | NO. 06-08030 |
| Debtor | Chapter 7 |
| | Honorable Bruce W. Black |

**DEBTOR'S MOTION PURSUANT TO 11 U.S.C. §§524, 105 FOR VIOLATIONS OF THE DISCHARGE INJUNCTION AND FED. R. BANKR. P. 9020 SEEKING SANCTIONS FOR CIVIL CONTEMPT AGAINST OCWEN LOAN SERVICING, LLC**

___

**NOW COMES** Sandra Freeman ("Debtor"), by and through her attorneys, Sulaiman Law Group, Ltd., bringing this Motion Pursuant to 11 U.S.C. §§524, 105 for Violations of the Discharge Injunction and Fed. R. Bankr. P. 9020 Seeking Sanctions for Civil Contempt Against Ocwen Loan Servicing, LLC ("Ocwen") for Violations of the Discharge Injunction, and in support thereof, stating as follows:

### JURISDICTION

1. The Court has subject matter jurisdiction over this proceeding pursuant to 11 U.S.C. §§ 105, 524, and 28 U.S.C. §§ 157 and 1334. This proceeding arises out of and is related to the above-captioned Chapter 7 case under Title 11.

2. This is a core proceeding within the meaning of 28 U.S.C. §§ 157(b)(1) & (2).

### PARTIES

3. Sandra Freeman was a debtor under Chapter 7 of Title 11 of the United States Code in Case Number 06-08030 filed on July 7, 2006, in the Bankruptcy Court for the Northern District of Illinois.

1

4. Ocwen is a mortgage loan subservicing company with headquarters in West Palm Beach, Florida and is authorized to do business in the State of Illinois

### STATEMENT OF FACTS

5. In 2003, Debtor obtained a mortgage loan ("subject loan") from Wells Fargo secured by her primary residence located at 705 Arbury Court, Romeoville, Illinois.

6. In November 2004, American Home Mortgage Servicing, Inc. ("AHMSI") acquired the servicing rights for the subject loan.

7. Debtor and AHMSI had many disputes in relation to the subject loan, including but not limited to, the improper application of payments and improper charges made by AHMSI to the subject loan.

8. AHMSI would repeatedly send Debtor dunning letters stating she was in default on the subject loan when the Debtor was in fact current with her mortgage payments.

9. On July 7, 2006, Debtor filed a Chapter 7 bankruptcy and duly scheduled AHMSI as a secured creditor on her Schedule D. *See* Exhibit A attached hereto is a true and correct copy of Debtor's Schedule D.

10. The main motive of Debtor's bankruptcy filing was unrelated to issues relating to the subject loan.

11. AHMSI received notice of Debtor's Chapter 7 filing through a notice produced by the Bankruptcy Noticing Center ("BNC"). *See* Exhibit B attached hereto is a true and correct copy of the BNC's Certificate of Service establishing service upon AHMSI.

12. On October 22, 2006, the Chapter 7 Trustee issued a No Asset Report.

13. AHMSI did not participate in Debtor's bankruptcy case.

2

14. On December 18, 2006, Debtor received a discharge of all dischargeable debts pursuant to 11 U.S.C. §727, including the subject loan. *See* Exhibit C attached hereto is a true and correct copy of the Discharge Order.

15. On December 20, 2006, the BNC provided AHMSI with notice of Debtor's Chapter 7 discharge. *See* Exhibit D attached hereto is a true and correct copy of the BNC Certificate of Service establishing service of the Discharge Order upon AHMSI.

16. The Discharge Order served upon AHMSI expressly stated:

> "[t]he discharge prohibits any attempt to collect from the debtor a debt that has been discharged…..a creditor is not permitted to contact a debtor by mail, phone, or otherwise.…to collect a discharged debt from the debtor." *Id*.

17. Debtor's discharge extinguished any personal liability on the subject loan and precluded any collection efforts against the Debtor by AHMSI and its successors and assigns.

18. Notwithstanding Debtor's discharge, from 2006 through 2013, AHMSI continued its collection efforts against Debtor through continuous dunning letters stating she was in default and liable for the subject loan.

19. On April 1, 2013, Ocwen obtained servicing rights for the subject loan.

20. Immediately after acquiring servicing rights, Ocwen began placing phone calls to Debtor's cellular phone in relation to the alleged default on the subject loan.

21. As soon as Ocwen's calls began, Debtor advised Ocwen that she obtained a Chapter 7 discharge and that she was no longer liable for the subject loan. Debtor repeatedly advised Ocwen that they should not be calling her because she received a discharge.

22. Notwithstanding Debtor's repeated requests that the calls cease, Ocwen placed an average of 2 phone calls a day from April 2013 until November 2014 in an attempt to collect upon the subject loan.

3

23. In total, Ocwen placed no less than 1,200 phone calls to Debtor from April 2013 until July 2015 in an attempt to collect upon the subject loan.

24. From April 2013 through July 2015, Debtor advised Ocwen of her discharge and requested that Ocwen's phone calls cease on at least 360 separate occasions.

25. During a 40 minute phone call on September 18, 2014, Debtor repeatedly advised the Ocwen representative that Ocwen should not be calling her because the subject loan was discharged in 2006.

26. The Ocwen representative responded to Debtor by stating that the calls are proper because Debtor's "bankruptcy was dismissed."

27. Debtor's requests that Ocwen's phone calls cease fell on deaf ears and Ocwen continued its phone harassment campaign.

28. Moreover, Ocwen continuously sent Debtor written correspondences demanding payment on the subject loan. *See* Exhibit E attached hereto are true and accurate copies of Ocwen's demands for payment on the subject loan.

29. Some of the written correspondences threatened Debtor that Ocwen "may report information on your account to credit bureaus....[l]ate payments, missed payments, or other defaults on your account may be reflected in your credit report." *Id.*

30. Some of Ocwen's correspondences included a payment coupon with payment instructions and threatened a late charge if payment is not made. *Id.*

31. Moreover, some of the correspondences were designed to create a sense of urgency by stating, "Past Due Amounts DUE IMMEDIATELY." *Id.*

32. On November 17, 2015, an Ocwen representative left an envelope at the Debtor's home stating "IMPORTANT.....PLEASE CALL MORTGAGE CO.....(800) 746-29636.....PLEASE BE

READY TO GIVE YOUR ACCOUNT NUMBER.....WE ARE EXPECTING YOUR CALL TODAY." The back of the envelope identified the sender as "Ocwen."

33. On December 5, 2015, an Ocwen representative left an identical envelope at Debtor's home requesting that Debtor immediately call Ocwen.

34. On December 16, 2015, an Ocwen representative left an identical envelope at Debtor's home, again requesting that Debtor immediately call Ocwen. *See* Exhibit F attached hereto is a true and accurate copy of the envelope delivered by Ocwen to the Debtor in an effort to collect upon the subject loan.

42. Concerned about the violations of her rights and invasion of her privacy, Debtor sought the assistance of counsel to cease Ocwen's collection efforts.

## LEGAL STANDARD

43. "The principal purpose of the Bankruptcy Code is to grant a 'fresh start' to the 'honest but unfortunate debtor.'" *Marrama v. Citizens Bank of Mass.*, 549 U.S. 365, 367, 127 S.Ct. 1105, 1107, 166 L.Ed.2d 956 (2007).

44. Pursuant to 11 U.S.C. §524(a)(2), a discharge order "operates as an injunction" against acts to collect discharged debts. 11 U.S.C. §524(a)(2).

45. A bankruptcy court has not only the inherent authority to enforce its orders, but also the statutory authority, under 11 U.S.C. §105(a), to issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of the Bankruptcy Code. This authority includes the issuance of sanctions as necessary, and encompasses both the court's authority to enforce orders and, also, necessarily includes orders imposing sanctions for violating the discharge injunction. In re Adams, 2010 Bankr. LEXIS 22017, *11 (Bankr. E.D. N.C. 2010).

46. "The automatic stay and discharge injunction are cornerstones of bankruptcy law. They are, respectively, a fundamental debtor protection and a fundamental debtor objective. The

automatic stay assists debtors in regaining their financial footing by allowing them to do so free from collection efforts. And, having successfully completed the bankruptcy process, discharge provides debtors with a new opportunity in life and a clear field for future effort, unhampered by the pressure and discouragement of pre-existing debt. But the automatic stay and discharge injunction must be enforced to provide any meaningful protection or incentive." *In re Curtis*, 322 B.R. 470, 483 (Bankr. D. Mass. 2005).

47. Section 524(a)(2) enjoins an act to collect a discharged debt, so a creditor that attempts to collect a discharged debt is in contempt of the bankruptcy court that issued the order of discharge." *Cox v. Zale Delaware, Inc.*, 239 F.3d 910, 915 (7th Cir. 2001).

48. "If the court finds that the creditor received notice of the discharge in bankruptcy, then the debtor will have to prove only that the creditor intended the actions which violated the injunction." *Faust v. Texaco Ref. and Mktg, Inc.*, 270 B.R. 310, 315 (Bankr. M.D. Ga. 1998).

49. In determining if punitive damages are appropriate, the court has looked to (1) the nature of the creditor's conduct; (2) the creditor's ability to pay damages; (3) the motive of the creditor; (4) any provocation by the debtor; as well as (5) the creditor's sophistication and knowledge of bankruptcy law and procedure. *In re Sumpter*, 171 B.R. 835, 845 (Bankr. N.D. Ill.1994).

50. Punitive damages are awarded in response to particularly egregious conduct for both punitive and deterrent purposes. Such awards are reserved for cases in which the defendant's conduct amounts to something more than a bare violation justifying compensatory damages or injunctive relief. To recover punitive damages, the defendant must have acted with actual knowledge that he was violating the federally protected right or with reckless disregard of whether he was doing so. *In re Wagner*, 74 B.R. 898, 903-904 (Bankr. E.D. Pa. 1987).

51. Punitive damages are especially appropriate when a party has acted in "arrogant defiance" of the Bankruptcy Code. *In re Medlin*, 201 B.R. 188, 194 (Bankr. E.D. Tenn. 1996).

52. "For violations of the discharge injunction, courts have awarded punitive damages 'where there exists a complete and utter disrespect for the bankruptcy laws.'" *In re Phillips,* 2012 Bankr. LEXIS, *10 (Bankr. N.D. Ohio 2012).

53. "In assessing punitive damages it has been reasoned that 'sophisticated commercial enterprises have a clear obligation to adjust their programming and procedures and their instruction to employees to handle complex matters correctly.'" *In re Wallace,* 2011 Bankr. LEXIS 1168, *23 (Bankr. M.D. Fla. 2011).

54. "Additionally, the Court may impose monetary sanctions as a coercive measure to ensure the creditor's future compliance with the discharge injunction. Sanctions to coerce a creditor to cease violating the discharge injunction are an appropriate use of contempt sanctions." *In re McLean*, 2013 WL 5963358 at *4 (Bankr. M.D. Ala. 2013).

**ARGUMENT**

55. Debtor was granted a discharge on December 18, 2006, thus extinguishing any liability on the subject loan and precluding any collection attempts on the subject loan.

56. All of Ocwen's demands for payment on the subject loan occurred after Debtor was granted a discharge of the subject loan.

57. Ocwen was given notice of Plaintiff's discharge on at least 360 occasions from Debtor herself during phone conversations with Ocwen and through its predecessors.

58. Despite having notice and actual knowledge of the discharge, Ocwen failed to cease collection efforts on the subject loan as demonstrated by the at least 1,200 phone calls it placed to Debtor to collect upon the subject loan.

59. Moreover, Ocwen's dunning letters to Debtor clearly demonstrate that it was attempting to collect a discharged debt from Debtor. *See* Exhibit E.

7

60. Ocwen even resorted to sending a representative to Debtor's *home* in order to intimidate Debtor into paying the discharged subject loan.

61. Ocwen's collection efforts on the subject loan were willful and are in brazen violation of the discharge injunction.

62. Ocwen, as a highly sophisticated and experienced mortgage servicer, should have implemented procedures and trained its employees to discourage and prevent willful violations of the discharge injunction. However, the egregious conduct by Ocwen, at Debtor's expense, establishes otherwise.

63. Ocwen's actions in attempting to collect the uncollectable and discharged debt are deliberate, unlawful, and egregious in nature as demonstrated by the frequency and regularity of its willful violations of the discharge order.

64. Ocwen has failed to cease collection efforts as mandated by the discharge injunction despite receiving notice of Debtor's bankruptcy on at least 360 occasions; leaving the Debtor no alternative other than to seek judicial enforcement of the discharge injunction.

65. The onus of compliance with the procedures and protections afforded by the Bankruptcy Code is on the highly sophisticated creditor.

66. Upon information and belief, Ocwen regularly and systematically engages in collection activity in direct violation of the automatic stay and the discharge order. *See In re Adams,* 2010 Bankr. LEXIS 2207, *11 (Bankr. E.D. N.C. 2010) (assessing punitive damages against Ocwen in the amount $66,300.00 for its willful violations of the discharge injunction); *In re Perviz,* 302 B.R. 357, 374 (Bankr. N.D. Ohio 2003) (assessing punitive damages against Ocwen in the amount of $8,000 for its willful violations of the discharge injunction); *In re Phillips,* 2012 Bankr. LEXIS 1042, *13 (Bankr. N.D. Ohio 2012) (assessing punitive damages against Ocwen in the amount of $10,000.00 for its willful violations of the discharge injunction).

8

67. Ocwen's pattern and practice of routinely violating the discharge injunction in disregard of the Bankruptcy Code demonstrates egregious behavior in arrogant defiance of the Bankruptcy Code and its mandates.

68. In order for the discharge injunction to be meaningful, it must be enforced by this Honorable Court, or else it becomes optional and frustrates Congress' goal in providing a "fresh start" to unfortunate debtors.

**DAMAGES**

69. Debtor suffers from high blood pressure and has been on medication for her blood pressure since 2006.

70. Moreover, Debtor suffers from chronic migraines and Ocwen's relentless phone calls instantaneously trigger Debtor's migraines.

71. Debtor has suffered and continues to suffer emotional distress, mental anguish, and anxiety as a direct result of the unlawful collection practices of Ocwen.

72. Moreover, Debtor was led to believe her bankruptcy filing had no legal effect for the last 2.5 years, thus exasperating her high blood pressure condition and chronic migraines.

73. Ocwen's harassing phone calls have severely disrupted Debtor's daily life.

74. Moreover, Ocwen's harrowing actions in sending representatives to Debtor's home to collect on the subject loan caused the Debtor to fear for her safety and deprived the Debtor of the most basic privacy rights. Debtor has reason to believe that Ocwen will continue sending representatives to her home to intimidate and coerce her into making payments on a discharged debt.

75. Debtor has been unduly inconvenienced and harassed by Ocwen's unlawful attempts to collect a discharged debt for over 2.5 years.

76. To protect its authority, and to give Debtor the relief that Congress contemplated, this Honorable Court should act promptly and firmly to stop conduct that violates 11 U.S.C. §524 as to not render the discharge injunction obsolete and optional.

77. Furthermore, coercive actions are warranted here to encourage Ocwen to take a fresh look at its internal procedures to ensure they are designed to prevent violations of 11 U.S.C. §524.

78. In order to protect the spirit of the discharge order as contemplated by Congress, this Court must impose civil contempt sanctions against Ocwen for its brazen disregard of this Court's orders, including actual damages, punitive damages, costs, and fees.

**WHEREFORE,** Sandra Freeman, having set forth her claims for relief against Ocwen Loan Servicing, LLC, respectfully prays of the Court as follows:

a. That this Honorable Court enter an order enjoining Ocwen from attempting to collect upon the subject loan from Debtor;
b. That this Honorable Court enter an order directing Ocwen to pay $250.00 for each call placed to Debtor from April 1, 2013 through the present for actual damages for violations of 11 U.S.C. §524;
c. That this Honorable Court enter an order directing Ocwen to pay $5,000.00 for each occasion it sent a representative to Debtor's home for actual damages for violations of 11 U.S.C. §524;
d. That this Honorable Court enter an order directing Ocwen to pay $200,000.00 to Debtor for punitive damages for violations of 11 U.S.C. §524;
e. That this Honorable Court enter an order directing Ocwen to pay a sum determined by the Court to Debtor for all reasonable legal fees and expenses incurred by her attorneys for violations of 11 U.S.C. §524; and
f. That Debtor be provided such other and further relief as the Court may deem just and proper.

Dated: December 28, 2015　　　　　　　　Respectfully Submitted,

　　　　　　　　　　　　　　　　　　　　/s/ Mohammed O. Badwan
　　　　　　　　　　　　　　　　　　　　Mohammed O. Badwan, Esq., ARDC#: 6299011
　　　　　　　　　　　　　　　　　　　　*Counsel for Debtor*
　　　　　　　　　　　　　　　　　　　　Sulaiman Law Group, Ltd.
　　　　　　　　　　　　　　　　　　　　900 Jorie Blvd, Ste 150
　　　　　　　　　　　　　　　　　　　　Oak Brook, IL 60523
　　　　　　　　　　　　　　　　　　　　Phone: (630) 575-8181
　　　　　　　　　　　　　　　　　　　　Fax: (630) 575-8188